**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DAMION HARRISON,

                              Petitioner,

            - v -                                      Civ. No. 9:07-CV-178
                                                              (GLS/RFT)
PAUL KIKENDALL,

                              Respondent.


**APPEARANCES:**                          **OF COUNSEL:**

DAMION HARRISON
Petitioner, *Pro Se*
Otisville Correctional Facility
Box 8
Otisville, NY

HON. ANDREW M. CUOMO                      JODI A. DANZIG, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

*Pro se* Petitioner Damion Harrison brings this Petition for a Writ of *Habeas Corpus*, pursuant
to 28 U.S.C. § 2254, on the following grounds: (1) he was denied the right to present an alibi witness
at trial; (2) insufficient evidence to convict; and (3) he was denied the right to a speedy trial.  Dkt.
No. 1, Pet.  For the reasons that follow, it is recommended that the Petition be **denied**.

### I.  BACKGROUND

Around 9:30 p.m. on January 12, 2001, Jason Bailey and Charles Curcio were robbed at
gunpoint in Schenectady, New York.  Dkt. Nos. 7-4, Second Trial Tr., dated June 5-7, 2002,

(hereinafter "Trial Tr.") at pp. 18-27.  Bailey and Curcio had driven from Brother Dominick's, a bar, to Bailey's residence so that Bailey could get some money from his house.  *Id.* at pp. 18-19.  As the two men left Bailey's house, they saw a man who appeared to be urinating in the driveway.  *Id.* at pp. 26-27.  Bailey and the man exchanged words and the man asked for a lighter, after which Bailey and Curcio got into the car and turned on the push-in car lighter.  *Id.* at pp. 30-31.  At that point, the man approached the driver's side window and pulled out a gun, pointed it at Curcio, who was in the driver's seat, and demanded their money.  *Id.* at pp. 35-36.  The two men handed over their money, and the perpetrator walked away.  *Id.* at pp. 35-37.

Curcio testified at trial that during the incident he recognized the robber as  Damian Harrison, the Petitioner, with whom Curcio had gone to junior high school and had played basketball with during that time.  *Id.* at pp. 68-71.  After the robbery, Bailey and Curcio phoned the police and Curcio identified the robber as Petitioner after having confirmed Petitioner's last name over the phone with a high school friend.  *Id.* at pp. 76-78.  Immediately thereafter, Bailey and Curcio went to the police station and gave the police Petitioner's full name and description.  *Id.*

Approximately eight (8) months after the robbery, Petitioner was arrested in August of 2001 and charged with two counts of Robbery in the First Degree under N.Y. PENAL LAW § 160.15(4). *Id.* at pp. 181-82; R., Ex. M, Indictment dated Sept. 18, 2001.

Petitioner's trial began in early March 2002 and ended in a hung jury.  Dkt. No. 7-3, First Trial Tr. dated Mar. 8, 2002, at pp. 13-21.  A second trial began on June 3, 2002, at the conclusion of which the jury convicted Petitioner of two counts of first-degree robbery.  On July 10, 2002, Petitioner filed a motion to set aside the verdict pursuant to N.Y. CRIM. PROC. LAW ("CPL") § 330.30, which was denied. R., Exs. A, Pet'r § 330 Mot., dated July 10, 2002, & C, Order Denying

§ 330 Mot., dated Aug. 2, 2002.  Next, Petitioner filed a direct appeal before the Appellate Division, Third Department, which unanimously affirmed the trial court's judgment.  R., Exs. D, Pet'r App. Div. Br. & F, Order dated Sept. 14, 2005; *see also People v. Harrison*, 803 N.Y.S.2d 291 (N.Y. App. Div. 3rd Dep't 2005).  Petitioner's subsequent Application for Leave to Appeal to the New York State Court of Appeals was denied on February 27, 2006.  *People v. Harrison*, 6 N.Y. 3d 813 (2006).

On or about April 9, 2006, Petitioner filed a motion to set aside the verdict pursuant to CPL § 440.  R., Ex. I, Pet'r § 440 Mot. dated Apr. 9, 2006.  The trial court denied the motion, and the Appellate Division denied his motion for leave to appeal.  R., Exs. K, Order dated June 30, 2006 & L, Order dated Sept. 19, 2006.  Harrison filed the instant *Habeas* Petition on February 7, 2007.

## II.  DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)  ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello*, 460 F.3d 238 (2d Cir. 2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003).  The AEDPA also requires that "a determination of a factual issue

made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. §

2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88

(quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test,

noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may
> grant habeas relief:  1) Was the principle of Supreme Court case law relied upon in
> the habeas petition "clearly established" when the state court ruled?  2) If so, was the
> state court's decision "contrary to" that established Supreme Court precedent?  3) If
> not, did the state court's decision constitute an "unreasonable application" of that
> principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221

F.3d 100, 108-09 (2d Cir. 2000)).

## B. Right to Compulsory Process

Petitioner argues that the trial court violated his Sixth Amendment right to compulsory

process by refusing to allow the testimony of a purported alibi witness.  The Compulsory Process

Clause of the Sixth Amendment affords criminal defendants the right to present witnesses in their

defense. *Taylor v. Illinois*, 484 U.S. 400, 408-09 (1988).  However, "defense witness testimony may

be limited or even excluded as a sanction for the violation of valid discovery rules."  *Wade v.

Herbert*, 391 F.3d 135, 141 (2d Cir. 2004).  In deciding whether the exclusion of testimony violates

the Sixth Amendment, a court must weigh the defendant's right to present favorable testimony

against its interest in protecting the "integrity of the adversary process" through the rejection of

unreliable evidence, "the fair and efficient administration of justice," and by hedging against "the

potential prejudice to the truth-determining function of the trial process." *Taylor v. Illinois,* 484 U.S.

at 414-25.

In this case, the record shows that at the close of the prosecution's case in the second trial, Petitioner sought to introduce a new alibi witness, whom up to that point had not been disclosed on Petitioner's witness list.  Trial Tr. at p. 120.  Petitioner's counsel stated that an investigator had obtained new information after following up on a lead provided by Petitioner that very day, and that up to that point Petitioner had "apparently forgot" about the information he provided to the investigator.  *Id.* at p. 122.  The proposed alibi witness, Clarence Stanford, was the director of the Boys and Girls Club in Schenectady.  He was to testify that Petitioner was an occasional volunteer at the Boys and Girls Club, and that he had a sign-in sheet for volunteers from January 12, 2001, the date of the robbery, that had Petitioner's name on it, and that the Boys and Girls Club was open from 3 p.m. to 11 p.m. on that date.  *Id.* at p. 124.  However, Petitioner's counsel stated that Mr. Stanford had no specific recollection of Petitioner being at the Boys and Girls Club on January 12th.  *Id.* at p. 133.  Moreover, the sign-in sheet did not indicate what time Petitioner was allegedly at the Boys and Girls Club.  *Id.* at p. 140.

The trial court refused Petitioner's request to present Clarence Stanford as an alibi witness, finding that Petitioner had not shown good cause for not filing the notice of an alibi witness in a timely fashion as required by CPL § 250.20.  Trial Tr. at pp. 170-71.  In rendering its decision, the trial court noted that

> [t]he proposed witness doesn't have any personal knowledge that the Defendant was even there, and if he were there in the hours in question that this facility was opened it would certainly not prevent him from showing up at this club to volunteer and leaving for a short period of time to be involved in a robbery that only took about five minutes, from the testimony, not too far away.  The Boys Club is on Craig Street and the [] robbery is alleged to have occurred on Becker Street, so it's certainly not an exculpatory alibi and it's certainly not a solid alibi by any means.  It is in the nature of an alibi defense, however.

-5-

*Id.* at p. 168.

The Appellate Division upheld the trial court's ruling, finding that given the "minimal probative value" of the proffered testimony, "the grossly untimely nature of the notice, and the unusual circumstance of offering at the close of proof in the second trial a different purported alibi than was presented in the first trial,"[1] the trial judge did not abuse the discretion granted him under CPL § 250.20(3), which gives trial judges the discretion to preclude an alibi witness's testimony if untimely notice has been given to the prosecution. *People v. Harrison*, 803 N.Y.S.2d at 293 (*citing People v. Brown*, 761 N.Y.S. 2d 630 (N.Y. App. Div. 1st Dep't 2003)).

Considering Petitioner's constitutional compulsory process claim, the Appellate Division found that the proffered testimony did "not satisfy the definition of an alibi" under CPL § 250.20(1), which defines an alibi as a "trial defense that at the time of the commission of the crime charged [the defendant] was at some place or places other than the scene of the crime," nor under Black's Law Dictionary's definition of the term, "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." *People v. Harrison*, 803 N.Y.S.2d 921 (citations omitted).

In *Noble v. Kelly*, the Second Circuit granted *habeas* relief to a criminal defendant who was denied the opportunity to present an alibi witness at trial, because the trial court "could have used less onerous sanction (such as an adjournment) to minimize any prejudice to the prosecution," and therefore "a finding of willfulness was []required to justify the exclusion of the precluded witness'

---

[1] In his first trial, Kiki Terry testified on Petitioner's behalf that he was babysitting her children on the night of the robbery.  Trial Tr. at p. 140-42.

*-6-*

testimony."[2]  246 F.3d at 100.  However, prior to explaining the aforementioned "willfulness" standard, the Second Circuit assumed that the "anticipated testimony qualifie[d] as alibi testimony under § 250.20," and held that "[t]he state court ruling on that score is an interpretation of state law that we will not review."  *Id.* at 98 (*citing Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

In this case, the Appellate Division ruled that Petitioner's proffered witness testimony did not constitute an alibi under CPL § 250.20.  *People v. Harrison*, 803 N.Y.S.2d 921 (citations omitted).  That ruling is an interpretation of state law that was not arbitrary nor capricious.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (*habeas* review "is limited . . . to determining whether the state court's finding [regarding an issue of state law] was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment claim").  The proposed testimony would not have supported a claim that Petitioner was somewhere other than the crime scene "at the time of the commission of the crime" because the volunteer sign-in sheet did not identify the time period during which Petitioner was allegedly at the Boys and Girls Club during its hours of operation from 3 p.m. to 11 p.m. on January 12, 2001, and the proposed witness had no independent recollection of seeing the Petitioner that night.  Therefore, this Court need not determine whether the trial court's preclusion of the witness testimony was justified by Petitioner's "willful conduct," the standard annunciated in *Noble v. Kelly*, because the proffered testimony did not constitute an alibi.  246 F.3d at 98.  Rather, we must apply the less-exacting standard that applies to Sixth Amendment claims

---

[2] The "willfulness test" set forth in *Noble* was predicated upon the Supreme Court's decision in *Taylor v. Illinois*, 484 U.S. at 415, wherein that Court stated:

> A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial.  If that explanation reveals that *the omission was willful and motivated by a desire to obtain a tactical advantage* that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony.

(emphasis added).

based on the exclusion of non-alibi witnesses.

When considering a claim based on the exclusion of a non-alibi witness, "review by a federal court is limited to determining [if the trial court's] ruling resulted in the denial of a fundamentally fair trial." *DeFayette v. Superintendent*, 2008 WL 755822, at *7 (N.D.N.Y. Mar. 18, 2008) (citing *Estelle v. McGuire*, 502 U.S. at 67-68)).   The Second Circuit has summarized the test for determining whether the exclusion of a witness rises to the level of a constitutional violation as follows:

> Whether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist. In a close case, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.  On habeas review, trial errors are subject to lenient harmless error review.  The creation of otherwise non-existent reasonable doubt satisfies the substantial and injurious standard [of *Brecht v. Abrahamson*, 507 U.S. 619 (1993)].

*Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001) (alterations in original) (citations and internal quotation marks omitted).

In this case, we do not find that the trial court's preclusion of Clarence Stanford's testimony denied Petitioner his right to a fair trial.  As previously discussed, Mr. Stanford had no independent recollection of seeing Petitioner at the Boys and Girls Club on the night of the crime, nor did the sign-in sheet that had Petitioner's name on it indicate at what time Petitioner was allegedly present in the Boys and Girls Club during that afternoon and evening, and finally, there was no proof that Petitioner was the one who put his name on the sheet.  Trial Tr. at pp. 124-25 & 131-34. Furthermore, this was not a "close case," as the evidence brought against Petitioner, which included the testimony of two eye-witnesses, was substantial.

For these reasons, it is recommended that the Petition be **denied** on this ground.

### C.  Insufficient Evidence

Petitioner claims that there was insufficient evidence to convict him of robbery.  However, Petitioner has not properly exhausted his state court remedies with respect to this claim.

A state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  To satisfy the exhaustion requirement with respect to a claim, a defendant must "present the substance of the same federal constitutional claim[s]" to the state courts "that he now urges upon the federal courts[.]"  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (internal quotation marks omitted) (citing *Turner v. Artuz*, 262 F.3d 118, 123-24 (2d Cir. 2001)).  "A federal constitutional claim has not been fairly presented to the State courts unless the petitioner has informed those courts of all the 'essential factual allegations' and 'essentially the same legal doctrine he asserts in his federal petition.'"  *Id.* (citing *Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (further citing *Picard v. Connor*, 404 U.S. 270, 276-277 (1971)).

However, a claim may be "fairly present[ed] to the state courts[,] . . . without citing chapter and verse of the Constitution," if there is: (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, or (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.  *Daye v. Attorney Gen. of the State of New York*, 696 F.2d at 191; *see also Smith v. Duncan*, 411 F.3d 340, 348 (2d Cir. 2005).

In this case, Petitioner asserted his legal-sufficiency claim in his brief before the Appellate Division on direct appeal, but did not assert it in his leave application before the Court of Appeals.

R., Ex. G, Pet'r Leave Application, dated Nov. 29, 2005 (raising the following claims: right to a

speedy trial, right to present alibi witness, and right to a new trial based on newly discovered

evidence). In order to properly exhaust a claim, "a petitioner must have asserted all of the claims

for which federal habeas review is sought in an application for leave to appeal to the New York

Court of Appeals." *Geraci v. Sherrif, Schoharie County Jail*, 2004 WL 437466, at *3 (N.D.N.Y.

Feb. 20, 2004) (citations omitted). Therefore, this claim is unexhausted.

However, Petitioner cannot not now seek leave from the Court of Appeals because under

state law he is only entitled to one leave application on direct appeal. *See* N.Y. CT. RULES §

500.10(a) (*cited in Strogov v. Attorney Gen. of the State of New York*, 191 F.3d 188, 193 (2d Cir.

1999)). When "it is clear that the unexhausted claim is procedurally barred by state law and its

presentation in the state forum would be futile[,]" *Aparicio v. Artuz*, 269 F.3d at 90, a district court

may deem such claim exhausted but also procedurally defaulted, *Bossett v. Walker*, 41 F.3d 825,

828-29 (2d Cir. 1994). Therefore, Petitioner's claim is deemed exhausted but procedurally

defaulted.

Where a prisoner has defaulted on his federal claims in state court, a district court may reach

the merits of such claim only upon a demonstration of "cause for the default and actual prejudice,"

or that a "failure to consider the claims will result in a fundamental miscarriage of justice."

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish "cause" sufficient to excuse a

procedural default, a petitioner must show that some objective external factor impeded his or her

ability to comply with the relevant procedural rule. *Id.* at 753; *Restrepo v. Kelly*, 178 F.3d 634, 639

(2d Cir. 1999). Examples of external factors include "interference by official," ineffective assistance

of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on

direct appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Bossett v. Walker*, 41 F.3d at 829 (citing *Murray*); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1992).

Here, Petitioner has shown no cause for his default. When a petitioner has failed to establish adequate cause for his procedural default, the court need not determine whether he suffered prejudice, since federal *habeas* relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006).

Finally, we must ask whether failure to consider these claims would result in a fundamental miscarriage of justice, which "occurs only in those 'extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" *Rodriguez v. Mitchell*, 252 F.3d 191, 204 (2d Cir. 2001) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Here, there is no evidence on the record that supports Petitioner's actual innocence. At trial, two victims who were eye-witnesses, one of which during the incident immediately recognized Petitioner as someone with whom he had gone to school with, testified that Petitioner robbed them at gunpoint. Although Petitioner argued at trial that there was insufficient light for the witness-victims to be able to identify him, that argument was rebutted by testimony that there was lighting in the area from the street lights, porch lights, and the car's interior dome light. Trial Tr. at pp. 25-27, 31-34, 50-52, & 105-06.

Therefore, we recommend that the Petition be **denied** on this ground.

## C.  Right to a Speedy Trial

Petitioner's final claim is that he was denied his right to a speedy trial.   Specifically, Petitioner claims that the time lapses between (1) the commission of the crime and the date of his

arrest, and (2) his arrest and his second trial, made it "difficult for [him] to recall his whereabouts on the night of the crime." Pet. at p. 6. Although Petitioner frames his speedy trial claim in general terms, each of these two times periods implicates a separate and distinct constitutional right.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. AMEND. VI. However, this Sixth Amendment right does not attach until the "defendant in some way becomes an accused, which means at the time of the indictment, the information, or the arrest, whichever comes earlier." *United States v. Gutierrez*, 891 F. Supp. 97, 99 (E.D.N.Y. 1995) (*citing United States v. MacDonald*, 456 U.S. 1, 7 (1982)). Thus, the Sixth Amendment does not provide a constitutional basis to attack a pre-formal accusation delay; rather, the constitutional grounding for such a claim is found in the Due Process Clause of the Fifth Amendment. *United States v. Elsbery*, 602 F.2d 1054, 1059 (2d Cir. 1979), *cert. denied*, 444 U.S. 994 (1979) (*citing United States v. Lavasco*, 431 U.S. 783, 789 (1977)).

As such, Petitioner's claim concerning the delay between the date of the commission of the crime and date of his arrest finds no audience before the Sixth Amendment, and must be analyzed pursuant to the applicable constitutional standards under the Fifth Amendment's Due Process Clause, whereas his claim concerning the delay between the date of his arrest and the date of his trial is properly considered under Sixth Amendment standards.[3] We consider Petitioner's Sixth Amendment claims first.

---

[3] We note that under New York law, there is not a "fine distinction between due process and speedy trial standards when dealing with delays in prosecution," and "the factors utilized to determine if a defendant's rights have been abridged are the same whether the right asserted is a speedy trial right or the due process right to prompt prosecution." *People v. Vernace*, 96 N.Y. 2d 886, 887 (N.Y. Ct. App. 2001) (internal quotation marks and citations omitted).

### 1. *Sixth Amendment Speedy Trial Claim*

The pertinent chronological time-line of events concerning this claim is as follows: On January 12, 2001, Jason Bailey and Charles Curcio were robbed at gunpoint. In August of 2001, the police located and apprehended Petitioner. Trial Tr. at pp. 181-82. Petitioner was indicted on September 18, 2001, and arraigned on September 25th of that same year. Dkt. No. 7-2, Hr'g Tr.[4] dated Sept. 25, 2001; R., Ex. M, Indictment. On November 28, 2001, Petitioner filed a pre-trial *omnibus* motion, which was decided on January 4, 2002. *Id.*, Hr'g Tr. dated Jan. 4, 2002. On January 18, 2002, Petitioner's *Wade* hearing[5] was adjourned until January 29, 2002, because Petitioner did not show up for that proceeding. *Id.*, Hr'g Tr. dated Jan. 18, 2002, at pp. 2-5. On January 29, 2002, Petitioner waived the *Wade* hearing and stated that he intended to reconsider a plea offer previously made by the prosecutor. *Id.*, Hr'g Tr. dated Jan. 29, 2002, at p. 5. On February 8, 2002, Petitioner's attorney indicated that Petitioner had rejected the plea and would be proceeding to trial. *Id.*, Hr'g Tr. dated Feb. 8, 2002, at p. 3. On February 8, 2002, the trial court held a *Sandoval* hearing.[6] *Id.*, Hr'g Tr. dated Feb. 28, 2002. On March 4, 2008, jury selection began in Petitioner's first trial, which ended in a hung jury on March 8th. Dkt. No. 7-3, First Hr'g Tr. dated Mar. 8, 2002. On May 24, 2002, the trial court noted that continued plea negotiations had apparently fallen through and a new trial was scheduled for early June, 2002. *Id.*, Hr'g Tr. dated

---

[4] Docket number 7-2 contains several transcripts from pre-trial proceedings that occurred prior to Petitioner's first trial. We will cite to these transcripts as "Hr'g Tr.," followed by the date on which the hearing occurred.

[5] *See United States v. Wade*, 388 U.S. 218 (1967). The purpose of a *Wade* hearing is to determine whether identification testimony should be suppressed because the manner in which the identification of the suspect was obtained was unduly suggestive.

[6] *See People v. Sandoval*, 314 N.E. 2d 413 (N.Y. 1974). A *Sandoval* hearing is "an evidentiary hearing held to determine whether, if the defendant testifies, his prior convictions may be admitted to impeach his credibility." *Shannon v. Senkowski*, 2000 WL 1683448, at *6 (S.D.N.Y. Nov. 9, 2000) (citing *Sandoval*).

*-13-*

May 24, 2002, at pp. 1-5.  The re-trial began on June 3, 2002, and ended in a conviction on both

counts of Robbery in the First Degree on June 7th.  Hr'g Tr. at p. 273.

The Appellate division denied Petitioner's speedy-trial claim, stating that

the preindictment delay, a period of about eight months, resulted from the fact that defendant was at large and police did not locate him until August 2001 despite efforts to do so.  The underlying charges were serious.  After his arrest, defendant was free on bail.  Defendant did not establish that prejudice requiring reversal occurred during the delay.

*People v. Harrison*, 803 N.Y.S.2d at 293 (citations omitted).

The Sixth Amendment does not specify a fixed period of time by which an accused must be

afforded a speedy trial.  However, the Supreme Court has identified four factors that a reviewing

court should balance in evaluating a speedy-trial claim: (1) the length of the delay; (2) the reason

for the delay; (3) whether the defendant asserted his speedy-trial rights; and (4) whether the

defendant was prejudiced by the delay.  *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

Under *Barker*, the first factor to consider is the length of the delay.  This first factor is a

threshold inquiry wherein a court must determine whether the length of the delay is "presumptively

prejudicial."  *Doggett v. United States*, 505 U.S. 647, 652 (1992).  If met, the threshold finding of

a presumptively prejudicial delay triggers an analysis of the remaining factors.  *Id*.  The Second

Circuit has held that there is a "general consensus that a delay of over eight months meets this

standard [of presumptive prejudice], while a delay of less than five months does not."  *United States*

*v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992) (citations omitted). The relevant time period for our

consideration of this Sixth Amendment claim is from the time Petitioner was arrested on August 15,

2001, through the commencement of Petitioner's second trial on June 3, 2002, an interval of 292

days, or nearly ten months.  Thus, we find that such delay is presumptively prejudicial, and we will

therefore proceed to analyze the *Barker* factors in the context of that delay.

Turning to the second *Barker* factor, we find that the reasons for the delay do not weigh in Petitioner's favor.  As outlined in the timeline above, the lapse between Petitioner's arrest and his second trial was a consequence of pre-trial motions, an adjournment caused by Petitioner's failure to appear, an adjournment Petitioner requested in order to reconsider a plea offer, a *Sandoval* hearing, and finally a trial that ended in a hung jury.  In fact, the prosecutor announced his readiness for trial as early as October 12, 2001, within two months of Petitioner's arrest.  Dkt. No. 7-2, Hr'g Tr. dated Oct. 12, 2001 at p. 4.  Thus, we do not find that the government "is more to blame for the delay."  *Doggett v. United States*, 505 U.S. at 651.

In terms of Petitioner's assertion of his Sixth Amendment right to a speedy trial, the record shows that he first asserted such right in his CPL § 330 motion to set aside the verdict, filed on July 10, 2002.  At no point during Petitioner's pre-trial proceedings did he raise a concern about his right to a speedy trial.  *See generally* R.  Such lack of expression does not waive Petitioner's Sixth Amendment rights, but it does not weigh in his favor.  *See Dexter v. Artus*, 2007 WL 963204, at *7 (N.D.N.Y. Mar. 27, 2007) (*citing Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir. 1988)).

Finally, the fourth *Barker* factor requires the Court to consider the prejudice Petitioner suffered as a consequence of the delay.  This factor is appropriately considered in relation to the Court's determinations on the previous three.  In that respect, the Second Circuit has stated that

> in a case in which the other factors firmly favor the government, i.e., relatively short delay, faultless conduct by the government, and absence of effort by the defendant to push his case to an earlier trial despite the opportunity to do so, the defendant would be obliged to make a powerful showing as to both the likelihood and severity of prejudice.

*United States v. Koskotas*, 888 F.2d 254, 258 (2d Cir. 1989).

In this case, Petitioner has failed to make such a powerful showing.  Petitioner asserts that he was prejudiced because the delay made it "difficult for [him] to recall his whereabouts on the night of

the crime." Pet. at p. 6.  Such a conclusory allegation, especially when considered in light of the other factors which weigh against Petitioner, does not demonstrate actual prejudice.  *See, e.g., United States v. Love*, 859 F. Supp. 725, 738 (S.D.N.Y. 1994).

Therefore, we find that Petitioner has not demonstrated that his right to a speedy trial under the Sixth Amendment was violated, and therefore we recommend that this claim be **dismissed**.

### 2. *Due Process Right to Speedy Trial*

Petitioner claims that the delay between the commission of the crime and his arrest violated his right to a speedy trial.  In order to establish that such a delay constitutes a due process violation, a petitioner bears the heavy burden of demonstrating that the delay "caused substantial prejudice to [his] rights to a fair trial *and* that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324 (1971) (emphasis added).  As mentioned earlier, Petitioner asserts he was prejudiced because the delay made it "difficult for [him] to recall his whereabouts on the night of the crime."  However, "[t]he dimming of memories with the passage of time, without more, does not create actual substantial prejudice to the right to a fair trial which would warrant dismissal of a case for pre-indictment delay." *United States v. Harrison*, 764 F. Supp. 29, 32 (S.D.N.Y. 1991) (citing *United States v. Elsbery*, 602 F.2d at 1059).

Furthermore, there is no evidence on the record that the failure of the police to apprehend Petitioner during the approximately eight-month interval between the crime and his arrest was intentional.  The record shows that after identifying Petitioner as a suspect shortly after the crime, the police put out a bulletin on Petitioner, posted a "wanted" ad with Petitioner's picture in the police department, and put out a teletype which was distributed to all law enforcement agencies in the state.  Trial Tr. at pp. 181-82.  In sum, there is no evidence that the police stalled in arresting

*-16-*

Petitioner in order to gain a tactical advantage at trial.

Therefore, it is recommended that Petitioner's due process speedy-trial claim be **dismissed**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000) *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).

Date:  May 7, 2009
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge